[Cite as *State v. Vineyard*, 2014-Ohio-3846.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.    25854 |
| v. | : | T.C. NO.    12CR3073 |
| ALLEN E. VINEYARD, SR. | : | (Criminal appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

# O P I N I O N

Rendered on the ____5th____ day of ____September____, 2014.

. . . . . . . . . .

APRIL F. CAMPBELL, Atty. Reg. No. 0089541, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

STEVEN H. ECKSTEIN, Atty. Reg. No. 0037253, 1208 Bramble Avenue, Washington Court House, Ohio 43160
        Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, P.J.

{¶ 1}    After the trial court overruled his motion to suppress evidence, Allen E. Vineyard pled no contest in the Montgomery County Court of Common Pleas to improper handling of a firearm in a motor vehicle (loaded/no license), in violation of R.C. 2923.16(B),

a fourth-degree felony.   A charge of carrying a concealed weapon was apparently dismissed.  The court sentenced Vineyard to community control for up to five years.

{¶ 2}   Vineyard appeals from his conviction, arguing that his motion to suppress should have been granted.  He claims that the trial court erred in finding that the police officer did not unlawfully extend the traffic stop and that his trial counsel rendered ineffective assistance by conceding that Vineyard was lawfully questioned by the officer without being informed of his *Miranda* rights.  For the following reasons, the trial court's judgment will be affirmed.

### I.   Factual and Procedural History

{¶ 3}   The State's sole witness at the suppression hearing was Five Rivers MetroParks Police Officer Charles Jones, a 20-year veteran of law enforcement.  His testimony revealed the following facts.

{¶ 4}   During his shift on October 8, 2012, Officer Jones was located at Adventure Central, a latchkey school program run by Five Rivers MetroParks in conjunction with The Ohio State University.  At approximately 2:54 p.m., Officer Jones observed Vineyard drive up to Adventure Central, stop in the marked fire lane, drop off children, and begin to drive away.  Multiple signs notify drivers that stopping, standing, or parking is not permitted in the fire lane.  Officer Jones stated that the failure to comply is a violation of the City of Dayton's Revised Code of General Ordinance 72.03.   Officer Jones initiated a traffic stop.

{¶ 5}   Officer Jones ran the license plate of Vineyard's vehicle and noticed that the owner was listed as female.  Jones approached Vineyard, identified himself, informed Vineyard that he had been stopped for dropping off his children in the fire lane, and asked

Vineyard for his identification and proof of insurance. Vineyard provided his driver's license, and Officer Jones returned to his cruiser to run the information through the law enforcement automated data system ("LEADS") using his onboard computer system.

{¶ 6} According to Officer Jones, the LEADS report indicated that Vineyard was "driving under suspension," which he stated was a first-degree misdemeanor and an arrestable offense. The report also indicated that Vineyard had several prior encounters with law enforcement, particularly the Dayton police, that Vineyard had a firearm during each of those encounters, and that Vineyard had a CCW (carrying concealed weapon) permit, but the permit had expired a few months before the traffic stop.

{¶ 7} Vineyard had not informed Officer Jones that he had a CCW permit and a weapon in the vehicle. Jones testified that when an individual has a valid CCW permit and has a gun in the vehicle, the person is required to indicate to law enforcement that he or she is a valid CCW permit holder, that there is a firearm in the car, and the location of that firearm.[1] The information in the LEADS report led Officer Jones to be concerned for his safety. He called for a back-up and advised dispatch that he had a possible individual with a firearm.

{¶ 8} Officer Jones testified that he intended to issue a citation for the fire lane violation and, at that point, he intended to arrest Vineyard for driving under suspension. He

---

[1] The carrying concealed weapons statute provides, in part: "No person who has been issued a concealed handgun license shall do any of the following: (1) If the person is stopped for a law enforcement purpose and is carrying a concealed handgun, fail to promptly inform any law enforcement officer who approaches the person after the person has been stopped that the person has been issued a concealed handgun license and that the person then is carrying a concealed handgun[.]" R.C. 2923.12(B)(1).

testified, "It was weighing heavily on my mind that I was going to make an arrest but I wanted to see how the situation was going to play out."

{¶ 9} Officer Jones completed a citation for driving under suspension, as a first-degree misdemeanor, while waiting for back-up to arrive. (He did not recall whether he also cited Vineyard for the fire lane violation.) It took the officer "about five to seven minutes" to complete the citation. (Jones later stated that it could take 10 to 15 minutes to write a citation for driving under suspension, depending on the jurisdiction involved.) Jones waited a couple more minutes, then went to Vineyard's vehicle and asked him to step out and walk over to the sidewalk. Vineyard complied. Officer Jones asked Vineyard if he had a gun in the car. Vineyard said, "Yes." Jones then asked Vineyard why he (Vineyard) had not informed him (Jones) that there was a gun in the car. Vineyard responded that he was a CCW permit holder and that other officers had told him that "it pops up on your screen and that I don't have to identify myself every time I get stopped by the police." Jones asked Vineyard why he carried a firearm. Vineyard stated that he lives in a bad neighborhood. The officer next asked where the gun was located in the car, and Vineyard told him.

{¶ 10} At this point, Officer Roach arrived. Officer Jones asked Officer Roach to watch Vineyard while he (Jones) retrieved the gun from the car. Jones located a loaded Smith and Wesson 9mm firearm in the location Vineyard had identified. Officer Jones secured the gun in the trunk of his cruiser. Officer Jones patted down Vineyard; the officer did not locate any other weapon. Officer Jones then advised Vineyard that the CCW permit had expired, and he issued the citation for driving under suspension. Jones told Vineyard

that he could be arrested for driving under suspension and his vehicle towed, but that he (Jones) had decided to allow Vineyard to drive away. Jones informed Vineyard that a report would be sent to the prosecutor's office about the weapon.

{¶ 11} Officer Jones testified that, if he had allowed Vineyard to return to the vehicle before finding out about the gun, "there's a possibility the individual could use the firearm, pull the firearm, use it against me. Again, an officer safety issue. But I was not willing to let him go at that time until I had some answers that gave me confidence that led me to believe that I was going – that we were going to be safe in this situation."

{¶ 12} The stop lasted 41 minutes, including the time spent waiting for back-up, securing the weapon, and discussing the stop with Officer Roach after Vineyard drove away. Officer Jones testified that a typical stop for driving under suspension would be "maybe 20 minutes at the most." Officer Jones described Vineyard as very cooperative throughout the stop.

{¶ 13} On cross-examination, Officer Jones stated that he did not focus on the timing of Vineyard's prior contacts with the police. Defense counsel questioned Officer Jones about Vineyard's driving under suspension, which counsel indicated was a Financial Responsibility Act (FRA) suspension.[2] Counsel asked Jones whether he recalled seeing two

---

[2] Driving under suspension, in violation of R.C. 4510.11, is a first-degree misdemeanor. R.C. 4510.11(D)(1). An FRA suspension, in violation of R.C. 4510.16, is generally an unclassified misdemeanor, punishable by a fine up to $1,000 and up to 500 hours of community service. R.C. 4510.16(D)(1). Jail time and community residential sanctions are not permitted. *Id.* If within three years of the FRA suspension the offender previously was convicted of or pleaded guilty to two or more violations of R.C. 4510.16, the offense is a fourth-degree misdemeanor. R.C. 4510.16(D)(2). A violation of R.C. 4510.11 is an arrestable offense, e.g., *State v. Howard*, 11th Dist. Lake No. 2009-L-158, 2010-Ohio-2817, ¶ 26, but a violation of R.C. 4510.16 is not, R.C. 4509.101(D)(1)(b).

prior FRA suspensions during the last three years, which was required for an FRA suspension to be a fourth-degree misdemeanor; Jones did not recall. He stated that he "saw [Vineyard] was just under suspension." At the hearing, Jones was shown a JusticeWeb printout and he agreed that Vineyard's last conviction for driving under suspension (a violation of R.C. 4510.11) was in 2007. Vineyard's most recent conviction was in 2010 for a traffic light violation. Jones indicated that he did not have the JusticeWeb information at the time of the stop.[3] With respect to the gun, Jones stated that with a valid CCW permit, Vineyard would be permitted to drive around with a gun, provided that he identified himself as a CCW permit holder upon detention by law enforcement.

{¶ 14} Vineyard testified at the hearing on his own behalf, stating that he had been stopped by law enforcement once in 2011, once in 2010, and twice in 2008.

{¶ 15} Following the presentation of testimony, the State argued (1) that Officer Jones had a reasonable and articulable suspicion that Vineyard violated R.C.G.O. 72.03, which justified the stop, (2) that the officer reasonably investigated whether a gun was in the vehicle based on the report that Jones had an expired CCW permit and previously had a gun during encounters with law enforcement, (3) that Vineyard was not in custody and thus not entitled to *Miranda* warnings before being asked about the gun, and (4) the exclusionary rule did not apply. In response, Vineyard's counsel conceded that the stop was lawful and that *Miranda* did not apply. Counsel argued that Officer Jones unlawfully detained Vineyard beyond the scope of the initial stop. Counsel asserted that Officer Jones unreasonably asked Vineyard to exit his vehicle and asked about the gun after he (the officer) had completed the

---

[3] Justice Web is a different system than LEADS. The LEADS report is not part of the record.

citation for driving under suspension. Counsel noted that nothing in Vineyard's behavior justified an extension of the detention, and the information in the LEADS report was stale.

{¶ 16} The trial court orally ruled that Officer Jones's continued detention of Vineyard was reasonable and denied the motion to suppress. The court pointed out that the LEADS report indicated that Vineyard's CCW permit had expired and that he had had a gun in his possession during prior stops. The report also indicated that Vineyard was driving under suspension, which the court noted was an arrestable offense. The court found that Officer Jones had a legitimate concern whether Vineyard was armed, and that it was reasonable for the officer to separate Vineyard from his car and ensure that a firearm was not unlawfully in the car in case the officer decided to allow Vineyard to drive away. The court further concluded that it was reasonable for Officer Jones to confiscate the gun once Vineyard stated that there was a gun in the car. The court filed a written entry denying the motion for reasons stated orally.

{¶ 17} Vineyard subsequently pled no contest to improper handling of a firearm in a motor vehicle (loaded/no license), in violation of R.C. 2923.16(B), and was sentenced to community control sanctions.

{¶ 18} Vineyard appeals from the trial court's judgment, raising two "issues" for review, which we construe as assignments of error. We will address them in reverse order.

## II. Denial of Motion to Suppress

{¶ 19} In his second assignment of error, Vineyard claims that the trial court erred in denying his motion to suppress, because Officer Jones exceeded the scope of the initial stop and unreasonably extended Vineyard's detention based on stale information in the

LEADS report. Vineyard asserts that the officer should have allowed Vineyard to leave after he (the officer) completed writing the citation.

{¶ 20} In ruling on motions to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994), citing *State v. Clay*, 34 Ohio St.2d 250, 298 N.E.2d 137 (1973). Accordingly, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id*.

{¶ 21} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*. We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). The officer must have more than an inchoate hunch or suspicion to justify an investigatory stop.

**{¶ 22}** A traffic stop may last no longer than is necessary to resolve the issue that led to the original stop, absent some specific and articulable facts establishing that further detention was reasonable. *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997); *State v. Wilkins*, 2d Dist. Montgomery No. 20152, 2004-Ohio-3917, ¶ 10. "When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates. 'In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.'" *Wilkins* at ¶ 10, quoting *State v. Aguirre*, 4th Dist. Gallia No. 03CA5, 2003-Ohio-4909.

**{¶ 23}** Once the reasonable period of time for issuing the traffic citation has passed, a police officer must have a reasonable articulable suspicion of criminal activity in order to continue the detention. *Wilkins* at ¶ 11. As explained by Ohio Supreme Court:

When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure.

*Robinette* at paragraph one of the syllabus.

**{¶ 24}** In this case, Officer Jones's testimony established that he completed writing a

citation for driving under suspension prior to asking Vineyard whether he had a gun. However, a search of Vineyard's driver's license through LEADS revealed that Vineyard was driving under suspension, an offense for which Vineyard could be arrested, and Officer Jones testified that he had not yet decided whether to arrest Vineyard for that offense.

{¶ 25} The report further indicated that Vineyard had a gun during prior encounters with the police and that Vineyard's CCW permit expired a few months earlier. Officer Jones testified that an individual is required to notify the police officer at each encounter if the individual has a CCW permit and the location of the weapon. Vineyard had not informed Officer Jones that he had a CCW permit or that he had a gun in his vehicle. These facts were sufficient to create a reasonable and articulable suspicion that Vineyard might unlawfully have a firearm in his vehicle and to cause Officer Jones to be reasonably concerned for his safety. Accordingly, Officer Jones acted reasonably in requesting backup before concluding the traffic stop and in asking Vineyard about the possible presence of a gun in the vehicle prior to allowing Vineyard to drive away. Vineyard's continued detention so that Officer Jones could confirm or dispel his concern that Vineyard might have a gun in his car without a valid CCW permit was not unlawful. And once Vineyard indicated that he had a gun in the car, Jones lawfully retrieved the gun from the vehicle.

{¶ 26} The second assignment of error is overruled.

## II. Ineffective Assistance of Counsel

{¶ 27} In his first assignment of error, Vineyard claims that his trial counsel rendered ineffective assistance "by conceding the issue of the firearm being obtained as a result of unwarned in-custodial questioning." He argues that Officer Jones should have informed him of

his *Miranda* rights prior to asking him whether he had a gun in the car and the location of the gun. Vineyard asserts that his motion to suppress would have been granted had his counsel not conceded this issue.[4]

{¶ 28} To reverse a conviction based on ineffective assistance of counsel, an appellant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688.

{¶ 29} As an initial matter, the State asserts that Vineyard's argument must fail, because a defendant who pleads no contest has admitted to the facts in the complaint and, thus, cannot show prejudice, as a matter of law. The State argues: "* * * Vineyard pleaded no contest to improper handling of a firearm in a motor vehicle. That is, his conviction comes from his own admission to the facts alleged in the complaint. He cannot therefore demonstrate prejudicial impact under the second prong of *Strickland*'s two-prong analysis." (Internal citations omitted.) The State cites to *State v. Fitzgerald*, 2d Dist. Greene No. 2001-CA-124, 2002-Ohio-3914, to support its assertion. We conclude that *Fitzgerald* is not controlling since the defendant in

---

[4] Vineyard does not argue on appeal that his trial counsel should not have conceded that the stop was proper. Even if this argument had been raised, it is well established that a police officer may lawfully stop a vehicle if the officer has a reasonable articulable suspicion that the motorist engaged in criminal activity, including a minor traffic violation. *E.g.*, *State v. Roberts*, 2d Dist. Montgomery No. 23219, 2010-Ohio-300, ¶ 14. Officer Jones's undisputed testimony established that he observed Vineyard stop in a fire lane, in violation of R.C.G.O. 72.03.

*Fitzgerald* never had a hearing on his motion and any prejudice was not in the record.

{¶ 30} Further, we have held that a claim of ineffective assistance of counsel may be established when defense counsel's conduct impaired the defendant's knowing and intelligent waiver of his right to a trial. *See State v. Kumpfel*, 2d Dist. Clark No. 2011 CA 45, 2012-Ohio-1980, ¶ 8. To establish prejudice under *Strickland*, the defendant must demonstrate that a reasonable probability exists that, but for counsel's error, he or she would not have entered the plea. *State v. Bird*, 81 Ohio St.3d 582, 585, 692 N.E.2d 1013 (1998) (defendant did not establish ineffective assistance of counsel based on counsel's failure to move to dismiss the indictment prior to defendant's no contest plea).

{¶ 31} In *State v. Blackshear*, 2d Dist. Montgomery No. 24302, 2011-Ohio-2059, in which the defendant pled no contest to possession of heroin and having a weapon while under disability, we stated that "trial counsel's failure to file a motion to suppress constitutes ineffective assistance of counsel only if the failure to file the motion caused the defendant prejudice; that is, when there is a reasonable probability that, had the motion to suppress been filed, it would have been granted." *Blackshear* at ¶ 26; *see also State v. Walters*, 4th Dist. Scioto No. 12CA3482, 2013-Ohio-695, ¶ 18; *State v. Hollins*, 3d Dist. Hancock No. 5-10-41, 2011-Ohio-5588, ¶ 48. Vineyard's no contest plea did not waive his ineffective assistance of counsel claim. We therefore turn to whether his motion to suppress would have been successful had his counsel not conceded the *Miranda* issue and, if successful, whether a reasonable probability exists that Vineyard would not have entered his plea.

{¶ 32} In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that the State may not use statements stemming from a

defendant's custodial interrogation unless it demonstrates the use of procedural safeguards to secure the defendant's privilege against self-incrimination. *Id*. at 444. Police are not required to give *Miranda* warnings to every person that they question, even if the person being questioned is a suspect. *E.g.*, *State v. Engle*, 2d Dist. Montgomery No. 25226, 2013-Ohio-1818, ¶ 23; *State v. Biros*, 78 Ohio St.3d 426, 440, 678 N.E.2d 891 (1997). Instead, *Miranda* warnings are only required for custodial interrogations. *Id*. "Custodial interrogation" means questioning initiated by the police after the person has been taken into custody or otherwise deprived of his freedom to the degree associated with a formal arrest. *Engle* at ¶ 24; *State v. Wilson*, 2d Dist. Montgomery No. 22665, 2009-Ohio-1279, ¶ 18, citing *State v. Steers*, 2d Dist. Greene No. 89-CA-38, 1991 WL 82974 (May 14, 1991).

{¶ 33} Not every detention rises to the level of an arrest, and there is nothing improper in a police officer's asking a motorist if he or she is armed. As we stated in *State v. Brown*, 2d Dist. Montgomery No. 25204, 2012-Ohio-5532:

> The United States Supreme Court held that the "noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Therefore, routine roadside questioning of a driver during an ordinary traffic stop does not constitute a custodial interrogation requiring *Miranda* warnings. *Id*.; *Pennsylvania v. Bruder*, 488 U.S. 9, 10, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988).

> Additionally, we have held that it is permissible for a police officer to ask someone stopped for a traffic violation if he is armed, even absent a reasonable

suspicion that the person is armed and presents a danger to the officer or others. *State v. Lenoir*, 2d Dist. Montgomery No. 16246, 1997 WL 309370 (June 6, 1997). As we explained in *Lenoir*, officers have a legitimate concern for their safety when conducting traffic stops. Although any search for weapons must be based on reasonable, articulable suspicion that a weapon is present, "a simple inquiry as to whether the person stopped has a weapon is not a search or a seizure." *Id*.

*Brown* at ¶ 10-11.

**{¶ 34}** Nothing in the record suggests that Vineyard's detention rose to the level of an arrest. Vineyard was stopped for parking in a fire lane; this temporary investigatory detention did not rise to the level of "custody." As part of the stop, Officer Jones was entitled to ask Vineyard to exit his vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331(1977); *State v. Evans*, 67 Ohio St.3d 405, 407-408, 618 N.E.2d 162 (1993). After Officer Jones retrieved Vineyard's gun, Vineyard was permitted to return to his vehicle and leave. At no point was Vineyard subjected to a custodial detention, and he was not entitled to *Miranda* warnings before being asked whether he had a gun and the location of the gun. Accordingly, we cannot conclude that Vineyard's counsel acted deficiently, when she conceded at the suppression hearing that *Miranda* did not apply, or that Vineyard was prejudiced by his counsel's concession.

**{¶ 35}** Vineyard's first assignment of error is overruled.

### IV. Conclusion

**{¶ 36}** The trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

April F. Campbell
Steven H. Eckstein
Hon. Dennis J. Langer