[Cite as *State v. Palmer*, 2016-Ohio-3359.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO.   26862 |
| | : | |
| v. | : | T.C. NO. 15CR340 |
| | : | |
| DANNIE L. PALMER | : | (Criminal Appeal from |
| | : |   Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ____10th____ day of ____June____, 2016.

. . . . . . . . . .

MEAGAN WOODALL, Atty. Reg. No. 0093466, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellant

ALYSIA GOSS, Atty. Reg. No. 0086398, 117 S. Main Street, Suite 400, Dayton, Ohio 45422
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

FROELICH, J.

        **{¶ 1}** The State of Ohio appeals a judgment of the Montgomery County Court of Common Pleas, which granted the motion of Dannie L. Palmer to suppress evidence.

For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 2} On March 4, 2015, Palmer was indicted for transporting more than ten scrap tires without obtaining an EPA registration certificate, in violation of R.C. 3734.83(A) and R.C. 3734.99(F), and possession of criminal tools (motor vehicle), in violation of R.C. 2923.24(A). A violation of R.C. 3734.83(A) is an unclassified felony, subject to a fine between $10,000 and $25,000, or a prison term between two and four years, or both. R.C. 3734.99(F).

{¶ 3} In April 2015, Palmer moved to suppress all evidence obtained from him as a result of the traffic stop and all evidence obtained as a result of his detention. Palmer asserted that he was unlawfully detained when the Dayton police officer initiated a traffic stop on December 17, 2014, because the stop was not based on a reasonable, articulable suspicion of criminal activity. Palmer further argued that the officer unlawfully expanded the scope and purpose of the initial stop. Palmer sought the suppression of any additional evidence as fruit of the poisonous tree.

{¶ 4} Officer Jeffery Spires was the sole witness at the suppression hearing. He testified as follows:

{¶ 5} Officer Spires has been a police officer for the City of Dayton for almost 19 years. He testified that he had worked with Deputy Dingee on several tires cases, was the first Dayton officer to present a tire case through Montgomery County, and, during the previous summer, took a four-day EPA seminar that addressed scrap tires, construction waste, runoff into rivers, and watershed. Spires stated that individuals can obtain a certificate from the EPA to transport more than ten scrap tires.

{¶ 6} On December 17, 2014, Officer Spires was assigned to routine road patrol and was working as a field training officer, meaning that he was training a recent graduate from the police academy, Officer William Davis. Spires was driving a marked cruiser, and he and Officer Davis were wearing the uniform of the day.[1]

{¶ 7} At approximately 12:30 p.m., Officer Spires stopped at a traffic light at an intersection in Dayton. Stopped beside him, in the turn lane, was a gray Dodge Dakota pickup truck with a "large amount of scrap tires and two car doors" in the bed of the truck. According to Spires, the car doors were lying on top of the tires to keep the tires from bouncing out of the bed of the truck. Officer Spires testified that he counted the tires, and he thought there were "at least ten tires in the vehicle at that time." He stated that he could not actually count all of the tires then, because he was unable to see all of them.

{¶ 8} Officer Spires identified the tires as "scrap tires" based on the facts that the tires did not have rims and were "just sitting in the bed of his truck." He stated they "looked like old used tires"; they were not brand new, did not have stickers on them, "weren't coming from the tire store," and had been driven on. Spires could not tell the brand of the car tires or their tread depth, but they had tread on them.

{¶ 9} Officer Spires drove around the block so that he could get behind the pickup, and he checked on the vehicle's license plate for any information. The vehicle was not reported as stolen, and there were no other "red flags." Once Spires was behind the truck, he counted the tires again, and he counted ten tires. At that point, Officer Spires initiated a traffic stop.

---

[1] The trial court's decision states that Officer Davis was driving the cruiser. This finding is contrary to Officer Spires's testimony, but it has little bearing on the legal issues before us.

{¶ 10}   As Officer Spires approached the driver's side of the pickup, he saw that a couple of tires were lying flat on the bottom of the truck bed, and he counted a total of 12 scrap tires in the truck bed.   Spires introduced himself to the driver, Palmer, and asked for his driver's license.   Palmer responded that he did not have a driver's license, that he was on his way to court for a driving under suspension charge, and that he was going to be late.   Officer Spires then asked Palmer if he had an EPA letter allowing him to transport more than ten tires.   Palmer responded that he did not have an EPA letter. Officer Spires attempted to fill out a "scrap tire interview form," but Palmer refused to answer any questions.   Officer Spires informed Palmer that the vehicle would be towed, and he offered to transport Palmer's mother, who was in the vehicle, home.   Officer Spires issued a citation to Palmer for driving under suspension; Palmer was not arrested.

{¶ 11} Officer Spires completed a memo report about the stop and faxed it to Deputy Dingee to assist her in her investigation of the scrap tires.   Spires stated that he would have let Palmer leave if Palmer had an EPA registration certificate.

{¶ 12} Officer Spires took several photographs of the tires in the truck bed on the day of the stop.   Spires was outside of his vehicle, standing up, when he took the photographs.   Grayscale photocopies of the photographs taken by Spires were admitted into evidence as Defendant's Exhibits A, B, C, and D.   A copy of the Scrap Tire Interview Record was admitted as State's Exhibit 1.

{¶ 13} In Palmer's post-hearing memorandum, he argued that it is illegal to transport more than ten tires only if a person does not have a valid scrap tire registration with the EPA, and that officers cannot pull over vehicles simply to check on whether they have a valid registration (EPA or otherwise).   He analogized the situation to stopping a

driver to check if the driver has a valid driver's license. Palmer further asserted that Officer Spires merely had a hunch that he (Palmer) was violating the law.

{¶ 14} In response, the State argued that Officer Spires saw a vehicle with at least ten of what he recognized as scrap tires. The State asserted that Spires had a reasonable, articulable suspicion of criminal activity and was justified in stopping Palmer's vehicle to determine whether Palmer had an EPA registration certificate. The State disputed Palmer's contention that the stop of Palmer's vehicle was comparable to pulling over someone to determine whether he or she has a driver's license.

{¶ 15} On October 8, 2015, the trial court granted Palmer's motion to suppress, reasoning that Officer Spires "had no reasonable articulable suspicion that Palmer had more than ten tires or that, more importantly, Palmer did not have a scrap tire transporter registration." The trial court explained: "Under R.C. 373[4].83, it is the lack of registration to transport more than ten scrap tires which constitutes a criminal offense. R.C. 3734.[83](A), (D). Off. Spiers [sic] provided no facts to support a reasonable articulable suspicion that Palmer was not a registered scrap tire transporter. Thus, Off. Spiers [sic] could not stop and detain Palmer, and doing so was a violation of Palmer's constitutional rights." (Citation omitted.) The trial court suppressed the evidence obtained as a result of the stop and any statements Palmer made.

{¶ 16} The State appeals the trial court's ruling.

## II. Reasonable, Articulable Suspicion

{¶ 17} In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639

N.E.2d 498 (2d Dist.1994); *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

{¶ 18} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*; *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8. The existence of reasonable suspicion is determined by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶ 19} " 'Reasonable, articulable suspicion' is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.' " *State v. Fears*, 8th Dist. Cuyahoga No. 94997, 2011-Ohio-930, ¶ 5, citing *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *see State v. Cole*, 2d Dist. Montgomery No. 26576, 2015-Ohio-5295, ¶ 13. However, the officer

must have more than an inchoate hunch or suspicion to justify an investigatory stop. *State v. Vineyard*, 2d Dist. Montgomery No. 25854, 2014-Ohio-3846, ¶ 21.

{¶ 20} In this case, Officer Spires stopped Palmer's vehicle to determine whether Palmer was violating R.C. 3734.83(A). That statute provides: "Except as provided in division (D) of this section, no person shall transport scrap tires anywhere in this state unless the business or governmental entity that employs the person first registers with and obtains a registration certificate from the director of environmental protection." R.C. 3734.83(A). R.C. 3734.83(D) states that R.C. 3734.83(A) does not apply to, among others, "any person who transports ten or fewer scrap tires in a single load." A "scrap tire" is defined as "an unwanted or discarded tire." R.C. 3734.01(Z).

{¶ 21} At the time of the stop, Officer Spires had observed Palmer's pickup truck with tires and two car doors in the truck bed. Spires observed that the tires were not new, lacked rims, did not have stickers on them, and had been driven on. Spires reasonably concluded that Palmer was transporting scrap tires.

{¶ 22} Officer Spires testified that he twice counted the visible tires before stopping Palmer's vehicle. While stopped next to Palmer's truck at the traffic light, Spires thought he saw "at least ten tires in the vehicle at that time." After pulling behind the vehicle, Spires stated that he counted ten tires. When presented with photographs of the tires in the truck, Spires stated that he could see eight or nine tires, and that more scrap tires were actually lying flat in the truck bed. Looking at Exhibit C, Spires testified, "Well, right here we have 1, 2, 3, 4, 5, 6, 7, 8. You can see a ninth one down there. And I don't think it's depicted in here, but you can see the tenth one in there, also." Spires pointed out that the visible tires were elevated above the truck bed and that there was something

underneath the tires to elevate them.

{¶ 23} The trial court concluded that Officer Spires lacked a reasonable articulable suspicion to initiate a traffic stop. The trial court stated that Officer Spires "testified he counted ten tires in the truck bed while he was in his cruiser, parallel with the pick-up truck." Although the look of the tires led Spires to believe that they were scrap tires, the trial court found that Palmer "had no reasonable articulable suspicion that Palmer had *more than* ten tires." (Emphasis added.)

{¶ 24} It was the province of the trial court, as the trier of fact, to evaluate the credibility of the witnesses. The trial court had the opportunity to observe Officer Spires, to review the photographs Spires took, and to determine whether to credit Spires's testimony that he had observed more than ten scrap tires in the truck bed prior to stopping Palmer's vehicle.

{¶ 25} Upon review of the record, there is competent, credible evidence to support the trial court's conclusion that Officer Spires did not observe more than ten tires in the truck bed prior to stopping Palmer's vehicle. Officer Spires testified that he counted ten tires in the back of Palmer's pickup truck. The photographs corroborated that the pickup contained tires and car doors, but they did not show that more than ten tires were in Palmer's vehicle. The trial court stated, in a footnote, that it had reviewed the photographs, which were taken from a position looking down into the truck bed, and could only count, at most, seven visible tires. Based on the photographs, the trial court reasonably found that Spires did not observe Palmer hauling more than ten tires. Spires did not testify how he concluded that additional tires were located in the truck. Based on the trial court's factual finding, we find no fault with the trial court's conclusion that Palmer

did not have a reasonable and articulable suspicion that Palmer's pickup truck was hauling more than ten scrap tires. Although the officer did not need to be certain or even have probable cause to believe that Palmer was transporting more than ten tires, the evidence in this case, as found by the trial court, indicates that Officer Spires had a hunch, rather than a reasonable suspicion, that the number of scrap tires in the truck bed exceeded ten tires.

{¶ 26} Given our conclusion that the officer lacked a reasonable and articulable suspicion to believe that the pickup contained more than ten tires, we need not address whether Officer Spires needed a reasonable and articulable suspicion that Palmer was transporting more than ten scrap tires without being an employee of a business or governmental entity that registered with and obtained a registration certificate from the director of environmental protection.

{¶ 27} The assignment of error is overruled.

### III. Conclusion

{¶ 28} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HALL, J., concurs.

WELBAUM, J., dissenting:

{¶ 29} I very respectfully dissent.

{¶ 30} Transport of scrap tires in Ohio is a highly regulated industry. As a result, persons transporting scrap tires enjoy a lesser expectation of privacy. With that in mind, I believe that Officer Spires had reasonable, articulable suspicion to stop Palmer's vehicle for a brief investigation to determine whether Palmer was violating R.C. 3734.83(A).

{¶ 31} As the majority notes, Officer Spires testified that when he counted the tires he thought "there were at least ten tires in the truck." Upon review of the record, there is competent, credible evidence to support the trial court's conclusion that Officer Spires did not observe more than ten tires in the truck bed prior to stopping Palmer's vehicle. However, Spires did not need to be certain -- or even have probable cause to believe -- that Palmer was transporting more than ten tires in order to have a reasonable suspicion that the number of scrap tires in the truck bed exceeded ten tires. At oral argument, Palmer agreed that reasonable suspicion is based on the totality of the circumstances, and no precise number of tires must be seen before a stop is reasonable.

{¶ 32} Here, Officer Spires testified that he counted ten tires in the back of Palmer's pickup truck. From what Spires could see, the truck contained only tires and two car doors lying on them, for the apparent purpose of keeping the tires from bouncing out of the bed of the truck. Spires indicated that the visible tires were elevated above the truck bed and that there was something underneath the tires to elevate them; based on what he had observed in the pickup, Spires could have reasonably suspected that additional tires were elevating the scrap tires that were visible. Based on Spires's having seen ten scrap tires and having a reasonable suspicion that additional tires were beneath the visible tires, Spires had a reasonable and articulable suspicion that Palmer was transporting more than ten tires in his vehicle.

{¶ 33} In suppressing the evidence from the stop, the trial court found that Officer Spires had no reasonable suspicion that Palmer lacked a scrap tire transporter registration certificate. The court reasoned that Officer Spires had provided no facts to support such a suspicion.

{¶ 34} R.C. 3734.83(A) prohibits persons from transporting more than ten scrap tires unless "the business or governmental entity that employs the person first registers with and obtains a registration certificate from the director of environmental protection." While the application for a registration certificate must include, among other things, the name and address of the principal office of the application, it "shall not include the license plate number or vehicle identification number of any motor vehicle used by the application to transport scrap tires." *Id.* However, a registered transporter must maintain a copy of the registration certificate in each motor vehicle used by the registrant to transport scrap tires. *Id.*

{¶ 35} On appeal, the State asserts that Spires possessed more than a mere hunch that Palmer was transporting scrap tires without proper registration. It emphasizes that Palmer was driving a two-toned pickup truck, and there were no company logos or insignia on the vehicle; the vehicle displayed no indicators that it belonged to a registered business or was being driven on behalf of a registered business. The State notes that the Ohio EPA's Law Enforcement Guide to Scrap Tires indicates that the lack of a logo or company placard is a factor to consider in assessing whether a driver is illegally transporting scrap tires.

{¶ 36} The State asserts that the trial court's apparent requirement that the officer know, prior to the stop, whether a vehicle has an EPA registration certificate would make it impossible for law enforcement officers to initiate a traffic stop on a vehicle carrying scrap tires. It contends that, based on the registration process under R.C. 3734.83, Officer Spires could not verify Palmer's registration status before the stop.

{¶ 37} Palmer responds that the Ohio EPA guidelines should not be considered,

as those guidelines were not presented or testified to in the trial court, and that an officer cannot stop a hauler of scrap tires simply to inquire whether the driver has a registration certificate. Palmer analogizes this case to a traffic stop to inquire whether someone has a valid driver's license, arguing that "[a]s police officers are not permitted to initiate a traffic stop simply to check on whether a person possesses a valid driver's license without reasonable articulable suspicion, they should also be precluded from stopping someone simply because they have tires in a truck bed." When asked at oral argument how an officer would know if a truck were authorized to haul scrap tires prior to a traffic stop, Palmer's counsel suggested that the Ohio legislature needed to amend R.C. 3734.83 (for example, adding a provision that registered transporters be required to display a decal), so that an officer could make that assessment.

{¶ 38} It is well established that "the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In *Prouse*, the State of Delaware asserted that discretionary traffic stops to check on a driver's license and registration were necessary to ensure the safety of its roadways. The United States Supreme Court rejected Delaware's argument, reasoning (1) that "it must be assumed that finding an unlicensed driver among those who commit traffic violations is a much more likely event than finding an unlicensed driver by choosing randomly from the entire universe of drivers," *id.*, (2) that it is "common sense that the percentage of all drivers on the road who are driving without a license is very small and that the number of licensed drivers who will be stopped in order to find one unlicensed operator will be

large indeed," *id.* at 659-660, and (3) that stopping a properly registered vehicle would do little to address safety aspects of automobiles, *id.* at 660. The Supreme Court concluded that "[t]he marginal contribution to roadway safety possibly resulting from a system of spot checks cannot justify subjecting every occupant of every vehicle on the roads to a seizure * * * at the unbridled discretion of law enforcement officials." *Id.* at 661.

{¶ 39} The stopping of vehicles transporting scrap tires is not akin to the random stopping of a vehicle at the discretion of a police officer who lacks reasonable suspicion of criminal activity, as was addressed in *Prouse*. The transportation, storage, and disposal of scrap tires are addressed in R.C. Chapter 3734, which concerns solid and hazardous wastes. Solid and hazardous wastes are highly regulated, both by the State of Ohio and the federal government. The statute addressing registration of transports of scrap tires, R.C. 3734.83, is merely one of several statutes related to scrap tire facilities. *See* R.C. 3734.70 to R.C. 3734.87. The stopping of a driver who an officer reasonably believes is transporting scrap tires is much more narrowly focused than the random stopping of any driver, at the officer's unbridled discretion, for the mere purpose of checking the driver's registration and driver's license.

{¶ 40} Moreover, Officer Spires had a reasonable articulable suspicion that Palmer may have been engaging in criminal activity, even without knowledge as to whether Palmer had a registration certificate from the Ohio EPA. R.C. 3734.83(A) generally proscribes persons from transporting scrap tires anywhere in Ohio, and only persons who are employed by a business or governmental entity with a registration certification from the Ohio EPA are permitted to engage in that activity. In addition,

R.C. 3734.83(D) exempts certain circumstances from the general prohibition, such as if ten or fewer scrap tires are being transported in a single load. R.C. 3734.83(D). A transporter of more than ten scrap tires violates the general prohibition, unless the vehicle has the required registration certificate. In the absence of knowledge that Palmer had a registration certificate from the Ohio EPA, Spires had a reasonable suspicion that Palmer was unlawfully transporting scrap tires based on his reasonable belief that Palmer was transporting more than ten scrap car tires.

{¶ 41} This approach is consistent with other situations in which individuals are permitted to engage in an activity only if properly licensed. In a carrying a concealed weapon case, the Eighth District concluded that officers had a reasonable suspicion that the defendant might be unlawfully carrying a concealed weapon when an officer observed the handle of a handgun protruding from his waistband. *State v. Taylor*, 8th Dist. Cuyahoga No. 92382, 2009-Ohio-5822, ¶ 8. The court reasoned that individuals are prohibited from carrying a partially concealed weapon, unless they possess a concealed carry license, and thus the officers were justified in conducting a *Terry* stop to ascertain whether an individual was lawfully carrying a concealed weapon. *Id.*

{¶ 42} The Tenth District has reached a similar conclusion. *State v. Moyer*, 10th Dist. Franklin No. 09AP-434, 2009-Ohio-6777, ¶ 25 ("An officer's seeing an object the officer reasonably believed to be a firearm in a person's hand creates reasonable, articulable suspicion that defendant is, or is about to be, engaged in criminal activity, namely carrying a concealed weapon."); *see also State v. Daniel*, 81 Ohio App.3d 325, 610 N.E.2d 1099 (9th Dist.1992)(officer's questioning turned into lawful *Terry* stop once officer reasonably suspected defendant had weapon concealed in his jacket).

{¶ 43} While this court has not directly addressed the issue of whether an officer must reasonably believe that an individual is not licensed to carry a concealed weapon, our case law also suggests that an officer need not check on the existence of a concealed carry license prior to a lawful *Terry* stop. In *Williamson*, police saw Williamson run from a house to a vehicle, appear to retrieve something from his waist area, and then reach into the rear seat of the vehicle. *State v. Williamson*, 2d Dist. Montgomery No. 25479, 2014-Ohio-325, ¶ 23. We stated that the officers had "sufficient information to create a reasonable suspicion that Williamson had committed the offense of carrying a concealed weapon, and the officers were therefore entitled to detain him to investigate that possibility." *Id.* at ¶ 24*; see also State v. Edwards*, 2d Dist. Montgomery No. 20511, 2005-Ohio-906 (officers, responding to a report of a fight in a building with a very high crime rate, lawfully stopped an individual with large bulge in pocket).

{¶ 44} Other criminal statutes are written similarly, prohibiting a particular activity "unless" certain specified conditions exist. *See, e.g.*, R.C. 2923.13(A)(2) (having weapons while under disability); R.C. 2923.17(B) (manufacturing of explosives); R.C. 2923.16(C) (improper handling of a firearm in a motor vehicle). For example, R.C. 2923.16(C) provides that "[n]o person shall knowingly transport or have a firearm in a motor vehicle unless the person may lawfully possess that firearm under applicable law of this state or the United States, the firearm is unloaded, and the firearm is carried in one of [four specified] ways." Consistent with the carrying a concealed weapon case law, the Eleventh District has held that it is the defendant's burden to establish that he or she had a license at the time of alleged offense. *State v. Meyers*, 11th Dist. Lake Nos. 2013-L-042, 2013-L-043, 2014-Ohio-1357, ¶ 43.

{¶ 45} We recently affirmed a conviction for illegal possession of fireworks, which was based on evidence that the defendant had set off fireworks at 4:00 a.m. in a residential neighborhood. *Miamisburg v. Hanson*, 2016-Ohio-964, 49 N.E.3d 336 (2d Dist.). R.C. 3743.65(A), the relevant statute, provided:

> No person shall possess fireworks in this state or shall possess for sale or sell fireworks in this state, except [1] a licensed manufacturer of fireworks as authorized by sections 3743.02 to 3743.08 of the Revised Code, [2] a licensed wholesaler of fireworks as authorized by sections 3743.15 to 3743.21 of the Revised Code, [3] a shipping permit holder as authorized by section 3743.40 of the Revised Code, [4] an out-of-state resident as authorized by section 3743.44 of the Revised Code, [5] a resident of this state as authorized by section 3743.45 of the Revised Code, or [6] a licensed exhibitor of fireworks as authorized by sections 3743.50 to 3743.55 of the Revised Code, and except as provided in section 3743.80 of the Revised Code.

We noted that R.C. 3743.65(A) "generally criminalizes the possession of fireworks in Ohio subject to the six exceptions contained therein. The last statute referenced above, R.C. 3743.80, sets forth eight exemptions from R.C. Chapter 3743 altogether."

{¶ 46} Hanson challenged his conviction, arguing that the State failed to present any evidence to establish that certain exceptions to, and exemptions from, the fireworks statute did not apply to him. We rejected Hanson's argument, concluding that the six exceptions to illegal possession of fireworks set forth in R.C. 3743.65(A) all are affirmative defenses that must be raised by the defense rather than elements of the offense that

must be negated by the prosecution. *Id.* at ¶ 13. We also concluded that R.C. 3743.80's eight exemptions from R.C. Chapter 3743 constituted part of the statutory definition of "fireworks" and, therefore, were neither additional individual elements to be proven by the State nor affirmative defenses to be proven by the defense. *Id.*

{¶ 47} In reaching our conclusion in *Hanson*, we analogized a requirement that the State present evidence to negate any of the six exceptions to illegal possession of fireworks to requiring the prosecution to prove, in a drug possession case, that the possessor is not a physician, pharmacist, drug manufacturer, or person with a lawful prescription, each of whom is excepted from the drug possession statute, R.C. 2925.11. We commented that "[i[t would turn hundreds of thousands of drug-possession cases upside down if the prosecution were required to prove that every defendant was not a physician, manufacturer, or pharmacist, all of which the State could ascertain from publicly-available records, just like permit and license records for fireworks. Likewise, the State need not prove that a defendant lacks a lawful prescription to obtain a drug-possession conviction under R.C. 2925.11." *Hanson* at ¶ 14.

{¶ 48} *Hanson* and the case law involving carrying concealed weapons, improper handling of firearm in a motor vehicle, and other statutes support a conclusion that an officer acts reasonably under the Fourth Amendment when he or she initiates a *Terry* stop to determine whether the transporting of more than ten scrap tires is being conducted by an authorized transporter. An officer need not have knowledge that the transporter lacks the required Ohio EPA registration certificate prior to the stop to investigate.

{¶ 49} Since the transport of scrap tires is a highly regulated industry persons transporting them enjoy a lesser expectation of privacy. *See, AL Post 763 v. Ohio Liquor*

*Control Commission*, 82 Ohio St.3d 108, 694 N.E.2d 905 (1998). In this case, Officer Spires had a reasonable suspicion that Palmer was transporting more than ten scrap tires in his pickup truck. Additionally, in this case, the truck lacked any indicia that it was being used by a business or governmental entity authorized to transport more than ten scrap tires. Officer Spires was justified in stopping the vehicle to ascertain whether Palmer was lawfully transporting the scrap tires.

{¶ 50} I would sustain the State's assignment of error and reverse the trial court order suppressing the evidence.

. . . . . . . . . .

Copies mailed to:

Meagan Woodall
Alysia Goss
Hon. Michael W. Krumholtz