[Cite as *State v. Martin*, 2019-Ohio-5147.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                               Court of Appeals No. L-18-1250

      Appellee                                          Trial Court No. CR0201801618

v.

Melvin Martin                                          **DECISION AND JUDGMENT**

      Appellant                                          Decided:  December 13, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} Defendant-appellant, Melvin Martin, appeals the October 24, 2018 judgment

of the Lucas County Court of Common Pleas, convicting him of improperly handling

firearms in a motor vehicle.  For the reasons that follow, we affirm the trial court's

judgment.

{¶ 2} On March 26, 2018, Melvin Martin was a backseat passenger in a 2003 Chevy Tahoe. Toledo Police Officers Nicholas Cook and Michael Mugler initiated a stop of the vehicle after the driver pulled over to a curb without signaling and for a tinted-windows violation. Cook approached the vehicle on the driver's side, and Mugler approached on the passenger's side. They requested the identification of the driver and the front seat passenger, initially not realizing that Martin was in the vehicle.

{¶ 3} After running a check in LEADS, the officers learned that the driver had a valid driver's license and no active warrants, but the front-seat passenger had a warrant in Toledo Municipal Court on a charge of disorderly conduct, a fourth-degree misdemeanor. After calling for back-up, which promptly arrived, they returned to the vehicle and ordered all three passengers out so that they could search the area surrounding the front passenger seat, purportedly incident to the arrest of the front-seat passenger.

{¶ 4} The driver and the front-seat passenger exited the vehicle without incident. They were asked whether they were carrying anything illegal, were patted down, and were directed to put their hands on the vehicle while each was guarded by an officer. The officers testified at the suppression hearing that the front-seat passenger was initially handcuffed, however this is difficult to see in the recording of the stop; his handcuffs were evidently removed by the time he came into view of the dashboard camera.

{¶ 5} While officers encountered no resistance from the driver and front-seat passenger, Martin was less cooperative. At first, Martin refused to get out of the car and insisted that he could not be searched or patted down. Ultimately, he complied and

2.

alighted from the vehicle, but tried to pull away from Mugler as he exited. Mugler grabbed Martin's arm, turned him around, and asked if he was carrying any weapons. Martin demanded to know why he was being patted down, but before a pat-down was initiated, he replied that he had a pistol in his pocket. Cook reached into Martin's pocket, removed the weapon, unloaded it, and placed it on the dashboard of his cruiser. Mugler handcuffed Martin. Throughout the course of the stop, Martin remained agitated, insisting that nobody had done anything wrong and that he had no warrants.

{¶ 6} Officers searched the vehicle and searched the area surrounding the front-seat passenger seat, however, instead of effecting a custodial arrest and booking the front-seat passenger into the Lucas County Corrections Center, they merely issued him a summons. They cited the driver for pulling over without signaling and for illegal window tint. Martin was transported to the Safety Building. On April 10, 2018, he was indicted on one count of improperly handling firearms in a motor vehicle, a violation of R.C. 2923.02 and 2923.16(B) and (I) (Count 1), and one count of carrying a concealed weapon, a violation of R.C. 2923.12(A)(2) and (F) (Count 2).

{¶ 7} On July 6, 2018, Martin moved to suppress the "fruits of the warrantless search of his person." He argued that to justify a pat-down of a pedestrian, driver, or occupant of a vehicle, police must harbor a reasonable suspicion that the person is armed and dangerous. Martin claimed that the officers lacked reasonable suspicion, therefore, the fruits of the search must be suppressed.

3.

{¶ 8} The trial court denied Martin's motion.  Following the denial of his motion, Martin entered a plea of no contest to Count 1 of the indictment.  A nolle prosequi was entered as to Count 2.  The trial court made a finding of guilt and sentenced Martin to one year of community control, up to three years' discretionary postrelease control, and applicable costs.  Martin's plea and sentence were memorialized in a judgment entry journalized on October 24, 2018.

{¶ 9} Martin appealed and assigns a single error for our review:

> The trial court erred in denying Appellant's motion to suppress evidence.

## II.  Law and Analysis

{¶ 10} In his sole assignment of error, Martin argues that the trial court erred in denying his motion to suppress evidence.  "Appellate review of a motion to suppress presents a mixed question of law and fact."  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  When the trial court considers a motion to suppress, it acts as the factfinder and is in the best position to resolve factual questions and to evaluate the credibility of witnesses.  *Id.*  We, therefore, must accept the trial court's findings of fact if they are supported by competent, credible evidence.  *Id.*  Our role then is to independently determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard.  *Id.*

{¶ 11} Martin does not challenge the validity of the initial traffic stop here, but he argues that he was subjected to an unconstitutional search and seizure when he was

4.

ordered out of the vehicle, asked if he was carrying a weapon, and patted down.  He maintains that the arresting officers lacked reasonable, particularized suspicion that he was armed and dangerous or probable cause that he was engaged in criminal activity.  While he acknowledges that an officer may order a passenger to exit a vehicle that has been properly stopped for a traffic violation, he nevertheless claims that "by removing [him] from the vehicle in which he was a passenger and not allowed to leave, he was subject to a custodial interrogation."

{¶ 12} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution prohibit unreasonable searches and seizures.  *See State v. Murrell*, 94 Ohio St.3d 489, 493, 496, 764 N.E.2d 986 (2002) ("The Fourth Amendment and Section 14, Article I contain virtually identical language" and "should be harmonized whenever possible.").  Under the Fourth Amendment, warrantless searches are per se unreasonable without prior approval by a judge or magistrate, subject to only a few specific exceptions."  *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 15.  One such exception is a search incident to a lawful custodial arrest.  *Knowles v. Iowa*, 525 U.S. 113, 117, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998)

{¶ 13} At the hearing on Martin's motion to suppress evidence, the officers explained that they removed the passengers from the vehicle so that they could perform a search of the vehicle's passenger compartment incident to the front-seat passenger's arrest.  But the authority to search a vehicle requires a lawful *custodial* arrest of an occupant of the automobile.  *Murrell* at the syllabus.  The officers did not effect a

5.

*custodial* arrest of the front-seat passenger; they issued him a summons. *See Knowles* at 117 (differentiating the potential danger to officers involved with a *custodial* arrest versus mere issuance of a citation). Thus, the warrant-incident-to-arrest exception did not apply.

{¶ 14} Nevertheless, while the officers may have been mistaken in their belief that a search of the vehicle could be performed absent a custodial arrest, their flawed justification for ordering the occupants out of the vehicle was not prejudicial here. This is because the officers were permitted to order the passengers out of the vehicle as a matter of course under the U.S. Supreme Court's decisions in *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) and *Maryland v. Wilson*, 519 U.S. 408, 410, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

{¶ 15} In *Mimms*, the U.S. Supreme Court held that where a vehicle has been lawfully detained for a traffic violation, an officer may order the driver out of the vehicle during the stop without violating the Fourth Amendment's prohibition against unreasonable searches and seizures. In *Wilson*, the court extended this rule to allow officers to also order passengers out of the vehicle. The court reasoned that the intrusion to drivers and passengers is minimal when compared to the potential for danger to the officer, either due to violence or by a traffic accident. *Id.* at 414-415. Martin's right to be free from unreasonable search and seizure was not violated, therefore, when he was ordered to exit the vehicle.

{¶ 16} As to Mugler's question to Martin whether he was carrying any weapons, Martin argues that he was wrongfully subjected to a custodial interrogation without first

6.

being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 442, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The right to *Miranda* warnings is grounded in the Fifth Amendment protection against compelled self-incrimination. *State v. Sell*, 2d Dist. Montgomery No. 26458, 2015-Ohio-1940, ¶ 15. But *Miranda's* procedural safeguards apply "only when persons are subjected to custodial interrogation." (Internal citations and quotations omitted.) *Id.*

{¶ 17} Martin argues that he was subjected to a custodial interrogation because— by the officers' own admissions—he was not free to leave the scene of the traffic stop. But Ohio courts have recognized that "[a]n individual temporarily detained as part of a routine traffic or investigatory stop ordinarily is not 'in custody' and is not, therefore, entitled to *Miranda* warnings." (Citations omitted.) *State v. Hambrick*, 4th Dist. Ross No. 15CA3497, 2016-Ohio-3395, ¶ 15-16. *State v. Vineyard*, 2d Dist. Montgomery No. 25854, 2014-Ohio-3846, ¶ 33-34, citing *Pennsylvania v. Bruder*, 488 U.S. 9, 10, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988) ("[R]outine roadside questioning of a driver during an ordinary traffic stop does not constitute a custodial interrogation requiring *Miranda* warnings."). The mere fact that Martin was not free to leave is an insufficient basis for finding that he was "in custody." *See Sell* at ¶ 19 (finding that officers' testimony that defendant was not free to leave was "an insufficient basis" for finding that she was in custody).

{¶ 18} Moreover, "it is permissible for a police officer to ask someone stopped for a traffic violation if he is armed, even absent a reasonable suspicion that the person is

7.

armed and presents a danger to the officer or others." *State v. Brown*, 2d Dist. Montgomery No. 25204, 2012-Ohio-5532, ¶ 11.  Simply inquiring whether a person has a weapon is not a search or a seizure. *Id.*

{¶ 19} Finally, Martin argues that there must be reasonable suspicion to justify a pat-down and "some basis to proceed with an extensive search of his person."  But here, the officers did not discover the pistol as a result of a pat-down or body search—they discovered the pistol because Martin admitted that he was carrying one.  Once the officers knew of its presence, they were entitled to remove it from Martin's person. *See Vineyard* at ¶ 34.

{¶ 20} Accordingly, we conclude that Martin was properly ordered out of the vehicle and asked whether he was carrying any weapons, and the officers properly removed the pistol from his pocket.  The trial court did not err, therefore, in denying Martin's motion to suppress evidence. We find Martin's sole assignment of error not well-taken.

### III.  Conclusion

{¶ 21} We find that the officers were permitted to order all passengers, including Martin, out of the vehicle during the traffic stop at issue.  We also find that the officers were permitted to ask Martin if he was carrying any weapons and to remove the weapon once Martin admitted he was carrying one.  We, therefore, find his sole assignment of

8.

error not well-taken. We affirm the October 24, 2018 judgment of the Lucas County Court of Common Pleas. Martin is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                            _____

JUDGE

Christine E. Mayle, P.J.

_____

Gene A. Zmuda, J.                               JUDGE
CONCUR.

_____

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.